# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 13, 2024 Session

## ESTATE OF PAUL DAVID ROWE, ET AL. v. WELLMONT HEALTH SYSTEM, ET AL.

**Appeal from the Circuit Court for Sullivan County**
No. C15326      Katherine Leigh Priester, Chancellor

———————————————

### No. E2024-00431-COA-R3-CV

———————————————

Paul David Rowe was not informed of a radiology report, which revealed two masses in his kidneys indicative of renal cancer, for five years. Mr. Rowe passed away after suit was filed, but his wife, Sharon K. Rowe, both individually and as the administrator *ad litem* of his estate, ("Plaintiffs") maintained a health care liability action against the allegedly negligent parties, Wellmont Health System d/b/a Wellmont Bristol Regional Medical Center ("Wellmont"), Carl W. Harris, Jr., D.O. ("Dr. Harris"), and Northeast Tennessee Emergency Physicians ("NETEP") (collectively, "Defendants") in the Circuit Court for Sullivan County ("the Trial Court"). Defendants filed two separate motions for summary judgment, arguing that the three-year statute of repose barred Plaintiffs' action. Plaintiffs raised the defense of fraudulent concealment. The Trial Court granted the motions for summary judgment finding that Defendants had no actual knowledge until 2015 that Mr. Rowe had or might have had cancer in 2010, and therefore, had nothing to fraudulently conceal. Plaintiffs appealed. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

Cary L. Bauer, Knoxville, Tennessee, for the appellants, Sharon K. Rowe and Estate of Paul David Rowe.

Jimmie C. Miller and Sydney B. Gilbert, Kingsport, Tennessee, for the appellee, Wellmont Health System d/b/a Wellmont Bristol Regional Medical Center.

Jeffrey M. Ward, Greeneville, Tennessee, for the appellees, Carl W. Harris, Jr. and Northeast Tennessee Emergency Physicians, P.C.

## OPINION

## Background

On August 30, 2016, Paul David Rowe, and his wife, Sharon K. Rowe, filed a complaint alleging health care liability against Defendants. The Rowes alleged that Mr. Rowe went to the Wellmont emergency room on May 10, 2010, complaining of left flank pain with nausea and back pain. He was treated by Dr. Harris, who ordered a CT abdomen and CT pelvis without contrast. The radiology report noted the "abdominal CT Impression" showed a "[h]ypodense mass in the upper pole of the right kidney and an isodense mass in the posterolateral cortex of the mid left kidney." A CT with contrast for "more definitive evaluation" was recommended. The CT scan imaging also revealed a kidney stone in the proximal left ureter causing "mild hydronephrosis." Mr. Rowe was advised of the stone and was told to follow-up with his family doctor in two to three days if he experienced no improvement. He was not advised of the masses in his kidneys until a visit to the emergency room in 2015. Mr. Rowe passed the stone the next day after being discharged and did not seek further medical treatment.

The Rowes further alleged that Mr. Rowe returned to the Wellmont emergency room on May 8, 2015, complaining of flank pain. He underwent another abdominal CT without contrast, which revealed the two masses. They had grown significantly since May 2010. Mr. Rowe was advised for the first time of the May 2010 radiology findings.

The Rowes alleged that Defendants had been negligent and/or failed to meet the generally accepted standards of acceptable professional practice by failing to inform Mr. Rowe of the masses in his kidneys in 2010, failing to order a CT with contrast for further evaluation, and failing to have policies in place to ensure disclosure of the CT findings to Mr. Rowe. They alleged that, as a result of Defendants' negligence and/or failure to meet the generally accepted standards of acceptable professional practice, Mr. Rowe had suffered "extreme pain of mind and body," the "loss of both kidneys due to renal cancer," the "loss of physical capacity," "disability," "medical expenses," "the loss of enjoyment of life," and "lost earnings and lost earning capacity." They also alleged that Ms. Rowe had suffered the loss of consortium with her husband. They demanded a jury trial and sought relief in the form of $10 million plus costs.

In October 2016, Wellmont filed a motion for summary judgment, arguing that the Rowes' suit was barred by the statute of repose, pursuant to Tenn. Code Ann. § 29-26-116(a)(3). Tenn. Code Ann. § 29-26-116(a)(3) provides:

> In no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant, in which case the

action shall be commenced within one (1) year after discovery that the cause of action exists.

Wellmont contended that the Rowes' cause of action arose on May 10, 2010, but that suit was not filed until six years later. Wellmont noted that the Rowes had not alleged fraudulent concealment. Around this time, NETEP and Dr. Harris filed a motion to dismiss, also arguing that the Rowes' complaint was barred by the three-year statute of repose.

In November 2016, the Rowes filed an amended complaint, providing additional facts and allegations to plead fraudulent concealment. The Rowes alleged the following additional facts, in pertinent part:

15. Defendants failed to advise Plaintiff of his abdominal CT Impression which showed a "[h]ypodense mass in the upper pole of the right kidney and an isodense mass in the posterolateral cortex of the mid left kidney." Defendants had a duty to inform Plaintiff of the CT findings but "remained silent and failed to disclose material facts despite a duty to do so . . . ." *See* Shadrick v. Coker, 963 S.W.2d 726, 735 (Tenn. 1998). Defendants and Plaintiff had a fiduciary and/or confidential relationship and thus the "failure to speak where there is a duty to speak is the equivalent of some positive act or artifice planned to prevent inquiry or escape investigation." *Id.* (*quoting* Hall v. De Saussure, 41 Tenn. App. 572, 297 S.W.2d 81, 85 (Tenn. App. 1956)).

16. Defendants advised Plaintiff that he had a kidney stone and that he should follow-up with his family physician in 2-3 days if no improvement. Defendants knew that Plaintiff would not discover the masses in his kidneys if he improved by passing the stone in his proximal left ureter. Defendants knew that kidney cancer often does not show any symptoms until the cancer has become advanced. Defendants further knew that kidney cancer is often diagnosed incidentally to some other injury or illness as occurred in this case, both in 2010 and 2015. Therefore, "the plaintiff could not have discovered the cause of action despite exercising reasonable care and diligence." Shadrick v. Coker at 735.

17. Defendants were aware of the CT findings of a "[h]ypodense mass in the upper pole of the right kidney and an isodense mass in the posterolateral cortex of the mid left kidney." Masses on the kidneys are presumed to be cancer until proven otherwise. Further, the radiologist recommended "post-contrast CT examination through the abdomen at some point for more definitive evaluation." Defendants knew that further workup was needed for a condition that could lead to disastrous results or even death if left untreated.

Defendants thus had knowledge of facts giving rise to the cause of action. *See* Shadrick v. Coker at 735.

18. Defendants fraudulently concealed material information from the Plaintiff. "[I]n a confidential relationship where there exists a duty to speak, such as in a doctor-patient relationship, mere silence constitutes fraudulent concealment." Shadrick v. Coker at 735-36 (*quoting* Hardin v. Farris, 87 N.M. 143, 530 P.2d 407 (N.M. App. 1974)).

* * *

22. This cause of action is brought within one year, one hundred twenty days of the discovery of the acts of malpractice complained of, said discovery being delayed by Defendants' fraudulent concealment.

In May 2017, NETEP and Dr. Harris filed a motion to dismiss the amended complaint, again claiming that the Rowes' action was barred by the statute of repose. They argued that fraudulent concealment did not apply because "[f]ailure to diagnose a condition is not a basis for fraudulent concealment." They argued that the Rowes would have to establish that Defendants knew a cause of action existed and then concealed that cause of action or remained silent about the cause of action when a duty to disclose existed. They argued that the Rowes could not establish that Dr. Harris or NETEP knew of the existence of a cause of action at the time of treatment in 2010 or prior to the running of the statute of repose. The Rowes filed responses opposing the motion to dismiss the amended complaint and Wellmont's motion for summary judgment. Wellmont withdrew its motion for summary judgment and joined NETEP's and Dr. Harris's motion to dismiss.

The Trial Court denied the motion to dismiss. The Trial Court found that "mere silence in the presence of a confidential relationship can be a sufficient basis for fraudulent concealment, and therefore, the plaintiffs have alleged sufficient facts to proceed in spite of the fact that this action would otherwise be barred by the statute of repose set forth at Tennessee Code Annotated § 29-26-116(a)(3)." Defendants thereafter filed answers to the amended complaint.

In December 2018, NETEP and Dr. Harris filed a "Suggestion of Death," informing the Trial Court of Mr. Rowe's death on December 19, 2018. Ms. Rowe, the administrator *ad litem* of Mr. Rowe's estate, and Ms. Rowe, individually, were substituted for Mr. Rowe as plaintiffs. Plaintiffs filed a second amended complaint, which was nearly identical to the first amended complaint, with the exception of added facts regarding Mr. Rowe's death and Ms. Rowe's appointment as administrator *ad litem* of his estate.

NETEP and Dr. Harris filed a motion for summary judgment, a statement of undisputed facts, and a memorandum in support. They again argued that Plaintiffs' action

was barred by the statute of repose. NETEP's and Dr. Harris's proposed undisputed facts and Plaintiffs' responses read as follows:

1. Paul David Rowe presented to the emergency room at Wellmont Bristol Regional Medical Center on May 10, 2010 with a chief complaint of left flank pain with nausea and back pain and was treated by the defendant, Carl W. Harris, Jr., M.D. (Second Amended Complaint, ¶ 7).

RESPONSE: Admitted.

2. Dr. Harris ordered a CT of the abdomen and pelvis ("CT scan") for Mr. Rowe to determine whether he had kidney stones. (Deposition of Carl W Harris, Jr., D.O. ("Harris Depo."), pp.14-15; Second Amended Complaint, ¶ 8).

RESPONSE: Admitted.

3. Dr. Harris reviewed the CT scan imaging himself and saw a kidney stone. (Harris Depo., p. 16).

RESPONSE: Admitted.

4. Dr. Harris did not think the stone was large enough to warrant consulting a urologist and thought that the kidney stone would pass without difficulty. *Id.* at 21-22.

RESPONSE: Admitted.

5. Dr. Harris did not diagnose kidney masses on the CT scan imaging when he evaluated those images and was not looking for those types of problems. *Id.* at 33.

RESPONSE: Admitted.

6. Mr. Rowe was advised of the stone and told to follow-up with his family physician in 2-3 days if no improvement. (Second Amended Complaint ¶ 9).

RESPONSE: Admitted.

7. Mr. Rowe was discharged from the ER by Dr. Harris shortly after 6:40 a.m. on May 10, 2010. (Harris Depo., at p. 36).

RESPONSE: Admitted.

8. Dr. Harris did not see a preliminary report from the radiologist relating to the CT scan. *Id*. at p. 16.

RESPONSE: Admitted that he so testified. It is further admitted that there was a pop-up menu within the PACS system that allowed him to hover over the radiologist "Impression" and see the preliminary report. (Horn Depo., p. 22-23).

9. The final radiology report was released at 4:30 p.m. on May 10, 2010. *Id*. at p. 18.

RESPONSE: Admitted.

10. Dr. Harris did not see the final radiology report until after the lawsuit was filed. *Id*. at p. 11.

RESPONSE: Admitted that he so testified.

11. The final radiology report contained the finding: "Hypodense mass in the upper pole of the right and an isodense mass in the posterolateral cortex of the mid left kidney are incompletely evaluated on this non-contrast examination. Recommend post-contrast CT exam through the abdomen at some point for more definitive evaluation." *Id.* at p. 20.

RESPONSE: Admitted.

12. Dr. Harris was not aware of that finding. *Id.* at p. 23.

RESPONSE: Admitted that he so testified. It is further admitted that there was a pop-up menu within the PACS system that allowed him to hover over the radiologist "Impression" and see the preliminary report. (Horn Depo., p. 22-23).

13. If he had been aware of that finding, he would have had some responsibility to call Mr. Rowe back. *Id.*

RESPONSE: Admitted. It is further admitted that a physician with Defendant Northeast Tennessee Emergency Physicians, P.C. was provided a copy of the final report which was faxed from the radiology department to the ER. (Burton Depo., p. 50).

14. Since Dr. Harris saw a kidney stone on the CT and Mr. Rowe's signs and symptoms were consistent with a kidney stone, Dr. Harris had no reason to go back and look at the radiology report. *Id.* at p. 42.

RESPONSE: Admitted that he so testified.

15. Dr. Harris was employed by Northeast Tennessee Emergency Physicians. *Id.* at p. 42

RESPONSE: Admitted. (This testimony actually appears on page 43 of the deposition).

16. There is no evidence that anyone from Northeast Tennessee Emergency Physicians ever saw the radiology report for the CT scan or realized that the findings in that report had not been communicated to Mr. Rowe or his primary care physician.

RESPONSE: Objection. This is not a proper Statement of Fact pursuant to Rule 56.03 as it fails to cite to a specific portion of the record: "Each fact shall be supported by a specific citation to the record." Tenn. R. Civ. P. Rule 56.03. Further, the Second Amended Complaint in this matter states that Defendant Northeast Tennessee Emergency Physicians "acted by and/or through its employees, servants, agents, and/or apparent agents including, but not necessarily limited to, Defendant Carl W. Harris, Jr., M.D., who in turn, were operating within the course and/or scope of their employment and/or agency in their treatment of Plaintiff Paul David Rowe. Defendant is liable for the negligence of its employees, servants, agents and/or apparent agents pursuant to the doctrine of *Respondeat Superior*." (Second Amended Complaint, ¶ 5). Other physicians employed by Defendant would have been provided the faxed radiology report for review. (Burton Depo., p. 50).

17. Mr. Rowe returned to Bristol Regional Medical Center's ER on May 8, 2015 and underwent a CT of his abdomen which showed that the kidney masses had grown significantly since May 10, 2010, and Mr. Rowe was advised of those findings. (Second Amended Complaint, ¶ 11).

RESPONSE: Admitted. It is further admitted that "[t]his is the first occasion when Plaintiff was advised of the May 10, 2010 CT findings." (Second Amended Complaint, ¶ 11).

Wellmont filed a motion for summary judgment, a statement of undisputed facts, and a memorandum in support, also arguing that the statute of repose barred Plaintiffs' action. Wellmont's undisputed facts were similar to Dr. Harris's and NETEP's. The

proposed undisputed facts unique to Wellmont's statement, as well as Plaintiffs' responses, read as follows:

5. The radiology report for the CT study was finalized and released by the radiology service at 4:30 p.m., which was approximately ten hours after Mr. Rowe's discharge. (Harris Deposition, p. 17 and 35).

RESPONSE: Admitted.

6. In addition to noting the presence of a kidney stone, the radiology report also described the presence of masses in the right and left kidneys. (Harris Deposition, p. 19 - 20).

RESPONSE: Admitted. It is further admitted that Plaintiff was never told about the presence of masses in the right and left kidneys. (Second Amended Complaint, ¶ 9).

7. The radiology report for the CT was faxed to the Emergency Department and uploaded to the hospital's PACS, which is the hospital's radiology information system. (Horn Deposition, p. 21 - 23).

RESPONSE: Admitted.

8. Dr. Harris testified that since he saw a kidney stone on the CT and Mr. Rowe's condition was consistent with a kidney stone, there was no reason for Dr. Harris to go back and review the radiology report after it was released. (Harris deposition, p. 42).

RESPONSE: Admitted.

9. Approximately five years later, on May 8, 2015, Mr. Rowe presented to the Emergency Department and underwent a CT of his abdomen. (Second Amended Complaint, ¶ 11).

RESPONSE: Admitted. It is further admitted that Plaintiff was not advised of masses on his kidneys until he was advised of the findings on the second CT scan:

"Plaintiff returned to Defendant Wellmont Bristol Regional Medical Center's emergency department on May 8, 2015 with a Chief Complaint of Flank Pain. Plaintiff again underwent a CT of his abdomen without contrast which again demonstrated bilateral kidney masses that had grown significantly since the May 10, 2010 CT. This is the first occasion when

- 8 -

Plaintiff was advised of the May 10, 2010 CT findings." (Second Amended Complaint, ¶ 11).

10. The results of the CT revealed that the kidney masses had increased in size since May of 2010, and Mr. Rowe was informed of the finding. (Second Amended Complaint, ¶ 11).

RESPONSE: Admitted.

11. The deposition testimony in this matter has failed to establish that any of the hospital's employees was aware that the CT performed on May 10, 2010 revealed the presence of masses on Mr. Rowe's kidneys and remained silent about the finding.

RESPONSE: Objection. This is not a proper Statement of Fact pursuant to Rule 56.03 as it fails to cite to a specific portion of the record: "Each fact shall be supported by a specific citation to the record." Tenn. R. Civ. P. Rule 56.03. Further, the Seconded Amended Complaint in this matter states that Defendant Wellmont "acted by and/or through its employees, servants, agents, and/or apparent agents including, but not necessarily limited to, Defendants Northeast Tennessee Emergency Physicians, P.C. and Defendant Carl W. Harris, Jr., M.D., who in turn, were operating within the course and/or scope of their employment and/or agency in their treatment of Plaintiff Paul David Rowe. Defendant is liable for the negligence of its employees, servants, agents and/or apparent agents pursuant to the doctrine of *Respondeat Superior*." (Second Amended Complaint, ¶ 4). Defendant's radiology department certainly had knowledge of the findings on the May 10, 2010 CT report. (Horn Depo., pp. 41-43).

.

In December 2022, the Trial Court held a hearing on the motions for summary judgment. The Trial Court entered an order granting Plaintiffs' request for additional discovery, providing the parties with a deadline of October 30, 2023, to submit any additional information for its consideration. In October 2023, Plaintiffs filed supplemental briefs opposing the two motions for summary judgment.

On February 28, 2024, the Trial Court entered an order granting Defendants' motions for summary judgment. The Trial Court analyzed the four elements of fraudulent concealment, which the Trial Court listed as: (1) "That the healthcare provider took affirmative action to conceal the plaintiff's injury or remained silent and failed to disclose material facts despite a duty to do so;" (2) "The plaintiff could not have discovered the wrong despite exercising reasonable care and diligence;" (3) "Healthcare provider knew of facts giving rise to the cause of action;" and (4) "Concealment by the healthcare provider

of material information from the plaintiff, which may consist of defendant withholding material information, making use of some device to mislead plaintiff, or simply remaining silent and failing to disclose material facts when there was a duty to speak."

With respect to the first element, the Trial Court found:

There are no allegations in the Complaint or the Amended Complaint that the Defendants did anything affirmative or took any steps to conceal the results of Plaintiff's CT scan and there has been no proof offered by the Plaintiff.

The Plaintiffs rely on the fact that there existed a confidential relationship between the Defendants and the Plaintiff, namely a Physician/Patient relationship, and that Defendants had a duty to disclose. Therefore, Plaintiffs argue, Defendants silence renders their failure to disclose fraudulent. However, Plaintiffs have failed to present any facts that substantiate that the Defendants had actual knowledge. The Court finds that negligence on the part of the Defendants or a deviation from the standard of care does not constitute fraudulent concealment.

Concerning the second element, whether Plaintiffs could not have discovered the wrong despite exercising reasonable care and diligence, the Trial Court found that no undisputed facts proved or negated that element.

In considering the third element, the Trial Court found:

The appellate courts have stated previously that "if the defendants failed to diagnose the condition of the plaintiff and such failure to diagnose the true condition fell below the applicable standard of care, it could not also constitute fraudulent concealment . . . How can one fraudulently conceal that which one does not know?" Murphy v. Lakeside Medical Center, Inc., E2006-01721-COA-R3-CV, 2007 WL 906760 (Tenn. Ct. App. March 26, 2007) quoting Mayers v. Miller Medical Group, No. 01-A-01-9802-CV0010, 1998 WL 848095 (Tenn. Ct. App. December 8, 1998). "An honest mistake made by a physician in diagnosing the cause of a patient's infirmity standing alone, is not evidence of fraudulent concealment." Id. quoting Ray v. Scheibert, 484 S.W.2d 63, 72 (Tenn. Ct. App. 1972).

Although the present case may not be a "failure to diagnose" case, similar logic applies. Plaintiffs are unable to prove Defendants' actual knowledge of the injury or that the Plaintiff had, or might have had, cancer in 2010. Accordingly, the Court finds that the Defendants have negated the essential element of fraudulent concealment, specifically that the Defendants

- 10 -

knew of the facts giving rise to the cause of action. Additionally, Plaintiffs have failed to establish that any of the Defendants had knowledge that Dr. Harris failed to communicate the information in the PACS system to the Plaintiff. The Plaintiffs have also failed to demonstrate that any of the Defendants had knowledge that the Plaintiff had not been advised about the kidney masses seen on the 2010 CT scan. Dr. Harris' testimony is undisputed and it provides that Dr. Harris reviewed the CT imaging himself and he did not review the radiologists findings. Plaintiffs have produced no evidence to rebut Dr. Harris' testimony. Finally, although the radiology report should have been faxed to the emergency room, there is no evidence that it actually was. There is also no evidence that it was actually provided to the emergency room physician on duty. Therefore, Plaintiffs are unable to create a dispute of fact as to knowledge.

With respect to the final element, the Trial Court explained:

> In the present case, Plaintiffs point to the <u>Shadrick</u> case to support their position that in the context of a physician-patient relationship, which is a confidential relationship, silence or failure to disclose what should be said or disclosed can amount to fraud. <u>Shadrick</u>, 963 S.W.2d at 736. However, the Court finds that an important caveat to that general proposition is that the physician must have ***knowledge*** of a fact concerning the patient's physical condition which is material to the patient.

> The Court finds that in the present case the record is void of any evidence that any of the Defendants knew that the Plaintiff had, or might have had, cancer in May 2010. Additionally, the record is void of any evidence that any of the Defendants knowingly withheld material information from the Plaintiff. The record is also void of any evidence that the Defendants used a device to mislead the Plaintiff. Simply put, the Plaintiffs have been unable to present any evidence to advance their claim for fraudulent concealment.

The Trial Court accordingly found that there was no genuine issue as to any material fact related to fraudulent concealment and granted the motions for summary judgment. Plaintiffs timely appealed.

### Discussion

Although not stated exactly as such, Plaintiffs raise one issue on appeal: whether the Trial Court erred in granting Defendants' motions for summary judgment based upon its finding that Plaintiffs failed to establish the fraudulent concealment defense to the statute of repose for health care liability actions.

Regarding the standard of review for cases disposed of by summary judgment, the Tennessee Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

***

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.[, Ltd. v. Zenith Radio Corp.*], 475 U.S. [574,]

- 12 -

586, 106 S.Ct. 1348 [89 L.Ed.2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC,* 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

The relevant statute to this case provides:

In no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant, in which case the action shall be commenced within one (1) year after discovery that the cause of action exists.

Tenn. Code Ann. § 29-26-116(a)(3). This Court has previously explained the statute of repose as follows:

The Medical Malpractice Act "places an absolute three-year limit upon the time within which malpractice actions can be brought." *Cronin v. Howe*, 906 S.W.2d 910, 913 (Tenn. 1995). This outer limit was intended "to provide certainty as to the time period during which a physician could be subject to potential liability." *Id.* The relevant statutory language provides: "In no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant, in which case the action shall be commenced within one (1) year after discovery that the cause of action exists." Tenn. Code Ann. § 29-26-116(a)(3) (2000).

So while the statute of limitations does not begin to run until the plaintiff's cause of action has accrued, the same cannot be said for the statute of repose. *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 515 (Tenn. 2005), *amended on grant of reh'g*, (Tenn. 2006). The statute of repose

- 13 -

extinguishes both "undiscovered causes of action which have yet to accrue" and "accrued and vested rights of action." *Mills v. Wong*, 155 S.W.3d 916, 925 (Tenn. 2005). The key event for the statute of repose is the date of the negligent act. Tenn. Code Ann. § 29-26-116(a)(3) (2000).

* * *

Exceptions to a statute of repose must clearly appear in the statute itself or in another statute that specifically references the statute of repose. *Calaway*, 193 S.W.3d at 516. The statute of repose for malpractice actions includes an exception within the statute itself—fraudulent concealment by the defendant. *Id.*

*Tucker v. Iveson*, No. M2018-01501-COA-R3-CV, 2020 WL 1172190, at *5 (Tenn. Ct. App. Mar. 11, 2020).

Once a statute of repose defense has been "asserted and established," the burden of proof shifts to the plaintiff "to establish the exception to the statute being claimed." *Robinson v. Baptist Mem'l Hosp.*, 464 S.W.3d 599, 611 (Tenn. Ct. App. 2014). Our Supreme Court has expressed what a plaintiff must prove to establish the defense of fraudulent concealment, explaining:

> To establish fraudulent concealment, a plaintiff must prove (1) that the defendant took affirmative action to conceal the cause of action or remained silent and failed to disclose material facts despite a duty to do so and, (2) the plaintiff could not have discovered the cause of action despite exercising reasonable care and diligence. *Stanbury* [*v. Bacardi*]*,* [953] S.W.2d [671] at [674], n. 6 [(Tenn. 1997)]; *Benton v. Snyder,* 825 S.W.2d 409, 414 (Tenn. 1992). In this regard it has been observed that when there is a confidential or fiduciary relationship between the parties, the "failure to speak where there is a duty to speak is the equivalent of some positive act or artifice planned to prevent inquiry or escape investigation." *Hall v. De Saussure,* 41 Tenn. App. 572, 297 S.W.2d 81, 85 (1956). In our most recent case addressing the subject, we recognized that
>
> > the affirmative action on the part of the defendant must be something more than mere silence or a mere failure to disclose the known facts. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry, **or else there must be a duty resting on the party knowing such facts to disclose them . . . . For example, such a duty arises where a confidential relationship exists, as between physician and patient. In such cases, there is a duty to**

- 14 -

**disclose, and that duty may render silence or failure to disclose known facts fraudulent.** This is the rule in Tennessee and in other jurisdictions.

*Benton,* 825 S.W.2d at 414 (emphasis in original) (citations omitted).

The third essential element of fraudulent concealment is knowledge on the part of the defendant of the facts giving rise to the cause of action. *Benton,* 825 S.W.2d at 414. In other words, the defendant must be aware of the wrong. *See Housh* [*v. Morris*]*,* 818 S.W.2d [39,] at 43 [(Tenn. Ct. App. 1991)] ("Basically, fraudulent concealment will be shown where the physician had knowledge of the wrong done and concealed such information from the patient."); *Ray* [*v. Scheibert*]*,* 484 S.W.2d [63,] at 72 [(Tenn. Ct. App. 1972)]("Our Tennessee cases hold that knowledge on the part of the physician of the fact of a wrong done is an essential element of fraudulent concealment.").

The fourth and final essential element of fraudulent concealment is a concealment of material information from the plaintiff. *Benton,* 825 S.W.2d at 414. Concealment "may consist of withholding information or making use of some device to mislead" the plaintiff in order to exclude suspicion or prevent inquiry. *Id.* When there is a relationship involving trust and confidence between the parties which would impose a duty to make a full disclosure of the material facts, mere silence or nondisclosure may constitute concealment. *See* 54 C.J.S. *Limitations of Actions* § 90 (1987).

*Shadrick v. Coker*, 963 S.W.2d 726, 735-36 (Tenn. 1998).

The parties do not dispute that Plaintiffs' action was commenced well beyond the three-year statute of repose. Therefore, the only issue is whether there was a genuine issue of material fact related to Defendants' alleged fraudulent concealment of facts giving rise to a cause of action. Plaintiffs contend that Defendants had a duty to disclose the radiology report's findings and that their failure to disclose these findings constitutes both the act of negligence and fraudulent concealment. In doing so, Plaintiffs misconstrue the defense of fraudulent concealment.

Here, it is undisputed that Defendants did not disclose the radiology report's findings to Plaintiffs until 2015; however, as this Court has explained, the fraudulent concealment defense has to do with a failure to disclose information related to the cause of action or wrongdoing. *See Housh v. Morris,* 818 S.W.2d 39, 43 (Tenn. Ct. App. 1991) ("Basically, fraudulent concealment will be shown where the physician had knowledge of the wrong done and concealed such information from the patient."); *Mayers v. Miller Med. Grp.*, No. 01-A-01-9802-CV00101, 1998 WL 848095, at *4 (Tenn. Ct. App. Dec. 8, 1998)

("[I]f the defendants failed to diagnose the condition of the plaintiff and such failure to diagnose the true condition fell below the applicable standard of care, it could not also constitute fraudulent concealment."). Here, there is no evidence that Defendants fraudulently concealed the cause of action, i.e. their negligent act of failing to disclose the radiology report's findings. An example of fraudulent concealment would be if Defendants had later learned that they negligently failed to disclose the radiology report's findings and then chose not to disclose their wrongdoing to Plaintiffs. This, however, is not what happened based on the multiple iterations of the complaint, Defendants' statements of undisputed facts, and Plaintiffs' responses.

We agree with the Trial Court that this case is similar to a failure to diagnose case, rather than an instance of fraudulent concealment. This Court has previously explained:

> "For the purposes of tolling the statute of repose, 'the failure to correctly diagnose an ailment cannot be the basis for fraudulent concealment claim unless the defendant had knowledge of the correct diagnosis.' " "One cannot conceal what one does not know." " '[A]n honest mistake made by a physician in diagnosing the cause of a patient's infirmity standing alone, is not evidence of fraudulent concealment.' "

*Givens*, 343 S.W.3d at 82-83 (internal citation omitted). Based on the filings, there is no evidence, or even an allegation, in the record to establish that Defendants later became aware of the radiology report's findings and their initial failure to disclose them but then chose not to disclose these findings to Mr. Rowe. Although there may be sufficient evidence to establish that Defendants were negligent, their negligent failure to disclose the radiology report to Mr. Rowe does not constitute fraudulent concealment. Rather, it constitutes the act of negligence for which Plaintiffs brought this action. Defendants' alleged negligence does not act as an exception to the statute of repose.

Plaintiffs also contend that one of Wellmont's undisputed facts and one of NETEP's and Dr. Harris's undisputed facts were not supported by citations to specific portions of the record pursuant to Tennessee Rule of Civil Procedure 56.03, which provides that each fact "shall be supported by a specific citation to the record." The relevant fact proposed by Wellmont read as follows: "The deposition testimony in this matter has failed to establish that any of the hospital's employees was aware that the CT performed on May 10, 2010 revealed the presence of masses on Mr. Rowe's kidneys and remained silent about the finding." The relevant fact proposed by NETEP and Dr. Harris read: "There is no evidence that anyone from Northeast Tennessee Emergency Physicians ever saw the radiology report for the CT scan or realized that the findings in that report had not been communicated to Mr. Rowe or his primary care physician." Plaintiffs object to these proposed undisputed facts on appeal, as they did before the Trial Court.

Nevertheless, even if we were to conclude that these proposed undisputed facts had not been properly supported by a citation, and even if Plaintiffs had successfully countered these assertions and established that a Wellmont or NETEP employee had read the report at the time of the report, all this would establish is that Wellmont or NETEP had acted negligently, not that they had fraudulently concealed their wrongdoing or the cause of action. Significantly, Plaintiffs did not allege nor present evidence that a Wellmont employee or a NETEP employee knew that Dr. Harris had failed to read the radiology report and disclose the report's findings to Mr. Rowe. As the Court has previously concluded: "Having no knowledge of a wrongful act or their potential liability, they had nothing to conceal." *Tucker*, 2020 WL 1172190, at *6. A defendant cannot have taken steps, even by silence, to fraudulently conceal a wrong when he had no knowledge of the wrong done.

With respect to Dr. Harris, Plaintiffs do not dispute that Dr. Harris reviewed the CT scan imaging himself, did not see the preliminary radiology report, did not see the final radiology report until after their lawsuit was filed in 2016, and was not aware of the report's findings. Dr. Harris could not have concealed that which he did not know, namely that Mr. Rowe had two masses on his kidneys. Although Plaintiffs rely on the deposition of Freddie R. Horn, who was Radiology Assistant Director at Wellmont during the relevant time period, for the proposition that the preliminary radiology report was available to Dr. Harris in a pop-up menu in the "PACS system," this is insufficient to create a genuine issue of material fact of Dr. Harris's actual knowledge. Without actual knowledge of the report and his failure to inform Mr. Rowe, there was nothing for Dr. Harris to conceal. Again, Plaintiffs present evidence of potential negligence, but negligence is not the same as fraudulent concealment.

In their responses to two of NETEP's and Dr. Harris's statements of undisputed facts, Plaintiffs suggest that some other physician employed by NETEP would have reviewed the radiology report. In one response, Plaintiffs assert: "It is further admitted that a physician with Defendant Northeast Tennessee Emergency Physicians, P.C. was provided a copy of the final report which was faxed from the radiology department to the ER. (Burton Depo., p. 50)." And in response to NETEP's and Dr. Harris's assertion that there was "no evidence that anyone from Northeast Tennessee Emergency Physicians ever saw the radiology report for the CT scan or realized that the findings in that report had not been communicated to Mr. Rowe or his primary care physician," Plaintiffs assert: "Other physicians employed by Defendant would have been provided the faxed radiology report for review. (Burton Depo., p. 50)."

Plaintiffs rely on the deposition of Tammy Burton, who had been the Assistant Clinical Leader in the Wellmont Emergency Department since 2011, and who testified that reports were faxed to all physicians at that time and that physicians had an opportunity to review reports, but that she did not know if any physicians actually did review them. Again, much like Plaintiffs' reliance on Mr. Horn's deposition testimony regarding the

PACS system, Ms. Burton's deposition testimony demonstrates only that NETEP-employed physicians were given an opportunity to review the radiology report—not that any physicians actually did so. More importantly, the cited portion of Ms. Burton's deposition testimony says nothing of whether an NETEP employee reviewed the report and knew Dr. Harris had failed to follow up with Mr. Rowe. Again, Plaintiffs present compelling evidence that NETEP physicians, Dr. Harris, and Wellmont *should* have reviewed the radiology report and informed Mr. Rowe, and acted negligently by failing to do so, but they present nothing to suggest that Defendants had actual knowledge of a cause of action or wrongdoing on their part and then failed to disclose these facts to Mr. Rowe.

At the summary judgment stage, once Defendants asserted and established a statute of repose defense, it was Plaintiffs' burden to show there is at least a genuine issue of material fact as to each of the four elements of the fraudulent concealment exception. Because Plaintiffs present only evidence of a genuine issue of material fact as to Defendants' alleged negligence, rather than any evidence to create a genuine issue of material fact as to their alleged fraudulent concealment of a cause of action, the Trial Court properly found that the statute of repose barred Plaintiffs' action and properly granted Defendants' motions for summary judgment. Defendants sufficiently demonstrated that Plaintiffs lacked evidence at the summary judgment stage to demonstrate fraudulent concealment. We, accordingly, affirm.

## Conclusion

For the foregoing reasons, we affirm the Trial Court's order granting Defendants' motions for summary judgment. We remand for further proceedings consistent with this Opinion, and collection of costs below. Costs of the appeal are assessed against Plaintiffs/Appellants, Sharon K. Rowe, Administrator *Ad Litem* of the Estate of Paul David Rowe, and Sharon K. Rowe, individually, and their surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE